UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBERT STOUT,

    Plaintiff,

vs.                                                      CASE NO. 3:07-cv-987-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

        This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #11, P's Brief). Defendant filed a brief in support of the decision to deny disability benefits (Doc. #12, D's Brief). The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference entered December 19, 2007 (Doc. #6).

        The Court has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the transcript of the underlying proceedings. Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determinations. Accordingly, the Court has decided the matter on

the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff Robert Stout filed an application for DIB on August 10, 2004, alleging disability beginning April 26, 2004 (Tr. 54).[1] Plaintiff's application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing, which was held on October 24, 2006 in Jacksonville, Florida before administrative law judge (ALJ) Robert Droker (Tr. 533-558). Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Dee Dee Locascio. Plaintiff was represented by attorney Michael P. Sullivan during the underlying administrative proceedings of this case (Tr. 28). In a decision dated November 16, 2006, the ALJ denied Plaintiff's application (Tr. 15-27). Plaintiff subsequently requested review of the hearing decision by the Appeals Council (AC), which was denied (Tr. 6-9). Thus, ALJ Droker's decision became the final decision of the Commissioner. 20 C.F.R. § 404.955.[2] Plaintiff current counsel of record, Mr. Eric W. Berger, Esq., timely filed the instant action in federal court on October 17, 2007 (Doc. #1).

## STANDARD OF REVIEW

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.

---

[1]The Court notes the ALJ's decision and the parties' briefs refer to an August 8, 2004 filing date; however, the Court finds no evidence in the record to support that date of filing.

[2]All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). A plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla, but less than a preponderance. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)). The evidence must do more than merely create a suspicion of the existence of a fact; it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Id*.

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human S*erv's., 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, a plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) (no person shall be considered to be under a disability unless he or she furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove he or she suffers from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## ANALYSIS AND BACKGROUND FACTS

Plaintiff Robert Stout was born on March 8, 1961 (Tr. 54). At the time of the ALJ's decision Plaintiff was forty-five years old (Tr. 536). Plaintiff has past relevant work experience as an airport security screener, a maintenance equipment mechanic, a photographer and a landscape gardener (Tr. 108, 538, 545). In his Disability Report-Adult

4

dated September 21, 2004, Plaintiff alleged he was unable to work due to chronic back pain, degenerative disc disease, anxiety/depression, arthritis and diabetes (Tr. 85-93). In the Disability Report-Appeal dated November 29, 2004, Plaintiff reported he had experienced changes in his condition in that he had more back and hip pain radiating to his knees, he was more depressed, unable to sleep and could not concentrate, and had experienced sexual dysfunction (Tr. 117-23).

Plaintiff raises two issues on appeal. First, Plaintiff claims the ALJ's residual functional capacity (RFC) assessment requiring Plaintiff to avoid "unusual stress" and the hypothetical question posed to the VE did not properly account for the ALJ's finding that Plaintiff's affective disorder was a severe impairment that resulted in mild to moderate difficulties in maintaining concentration, persistence or pace (P's Brief at 14-19). Second, Plaintiff claims the ALJ erred by improperly ignoring the medical opinion of one of Plaintiff's treating physicians (P's Brief at 19-24).

**Plaintiff's Residual Functional Capacity and the ALJ's Hypothetical Questions**

The first issue is whether the ALJ's assessment of Plaintiff's residual functional capacity that restricted Plaintiff to "avoid work that involves unusual stress" and the hypothetical question posed to the VE adequately accounted for the finding that Plaintiff's affective disorder was a severe impairment that resulted in mild to moderate difficulties in maintaining concentration, persistence or pace (P's Brief at 15-16).

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure set out at 20 C.F.R. § 404.1520a. Section 404.1520a (b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in

5

paragraph (e) of that section.  Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace will be rated using a five point scale of: "None, mild, moderate, marked, and extreme" and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more."  Section 404.1520a (e)(2) provides in pertinent part that "[a]t the administrative law judge hearing [level] . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

In this case, the ALJ found Plaintiff to have the severe impairment of an affective disorder[3] (Tr. 20).  Thus, the ALJ found Plaintiff had a severe mental impairment that affected his ability to work.  In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff's affective disorder caused "no restriction of activities of daily living and no difficulties in maintaining social functioning" (Tr. 21).  The ALJ did find, however, Plaintiff's affective disorder caused "mild to moderate difficulties in maintaining concentration, persistence or pace," but Plaintiff had not experienced any repeated episodes of decompensation (Tr. 21).

If the ALJ finds a plaintiff's impairment or combination of impairments to be severe, then the ALJ must determine whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 1520(d), 404.1525, 404.1526).  In this case,

---

[3]Generally speaking, an affective disorder is a class of mental disorders that are characterized by a disturbance in mood. *On-Line Medical Dictionary* at http://www.pharma-lexicon.com/medicaldictionary.php (last visited March 25, 2009).

6

the ALJ found Plaintiff's affective disorder did "not meet or equal any section under 12.00 Mental Disorders" (Tr. 21). In addition, the ALJ found Plaintiff did "not have an affective disorder with symptoms described under section 12.04, along with the required level of functional limitation under the 'B' or 'C' criteria of the Mental Listings" (Tr. 21).

Before proceeding to step four of the sequential evaluation process, the ALJ considered the entire record and determined Plaintiff's residual functional capacity (RFC) (Tr. 21). In general, the RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the physicians' evaluations of a plaintiff's condition and the medical consequences thereof. *Id.* If a plaintiff can still do the kind of work he or she did in the past, then the Regulations require that he or she be found not disabled. In evaluating a plaintiff's RFC, the ALJ must consider all of a plaintiff's impairments, including subjective symptoms such as pain.

Here, the ALJ found Plaintiff had the RFC to perform "light work activity on a sustained basis" and could "lift and/or carry 10 pounds frequently and 20 pounds occasionally" (Tr. 21). The ALJ found Plaintiff could occasionally bend, crouch, kneel, stoop, squat, and crawl (Tr. 21). The ALJ placed additional limitations on the work Plaintiff could do by requiring Plaintiff be able to alternate between sitting and standing throughout the workday and to avoid ladders, unprotected heights, operation of heavy moving machinery, operation of foot controls and pushing and pulling of arm controls, and work that involves exposure to unusual stress (Tr. 21).

At the administrative hearing level of a Social Security disability case, the ALJ often elicits testimony from a vocational expert in order to introduce independent evidence of the existence of work that a plaintiff could perform with specified vocational characteristics. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *Holley v. Chater*, 931 F. Supp. 840, 851 (S.D. Fla. 1996). If the ALJ elects to use VE testimony, the ALJ must pose a hypothetical question that encompasses all of a plaintiff's severe impairments in order for the VE's testimony to constitute substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include non-severe impairments or the limitations in the hypothetical question that were properly rejected as unsupported. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Fla. 2001); *Mullin v. Astrue*, No. 3:07-cv-765-J-JRK, 2008 WL 5412190, *8 (M.D. Fla. Dec. 29, 2008).[4]

At the October 23, 2006 hearing in this case, vocational expert Dee Dee Locascio testified (Tr. 552-57). The VE was sworn in at the beginning of the hearing, heard the Plaintiff's testimony, and testified herself that she had reviewed the record made available to her prior to the hearing (Tr. 552). ALJ Droker asked the VE Locascio to:

> Assume the filing claimant is 45 years old, has a high school education plus 1 year of college. Assume further I find that he could perform light work but is further limited by the following exertional and [non-exertional] impairments. He needs a sit/stand option, he needs to avoid ladders or unprotected heights, he needs to avoid the operation of heavy moving machinery. He needs to avoid unusual stress. He can occasionally bend, crouch, kneel, stoop, squat, or crawl. He needs to avoid the operation of foot controls. he needs to avoid the operation of push/pull arm controls.

---

[4]Unpublished opinions are cited only for persuasive authority.

(Tr. 553.)

In response to this hypothetical question, the VE testified the job of an airport security officer as the Plaintiff had performed it while under "light duty" restriction would not be eliminated, but all other past relevant work identified by the Plaintiff would be eliminated (Tr. 553-54). The VE further testified that the airport security officer as Plaintiff performed it under light duty was a special accommodation that did not accurately portray how the job was normally performed (Tr. 554).

The ALJ modified the hypothetical question to assume entry level work in which the claimant had no skills or semi-skills at all, but was the age previously described and had the same work experience and education previously described (Tr. 554). The VE was directed to assume further the claimant could perform light work and had the same exertional and non-exertional limitations originally described (Tr. 554). Under this scenario, the VE identified the light exertional jobs of cashier II, photographic processor, ticket seller, and the sedentary exertional jobs of call out operator and surveillance system monitor as work the claimant could perform (Tr. 554-55). Reducing the ability to lift weight to five pounds, the VE still identified the call out operator and surveillance system monitor jobs as work the claimant could perform (Tr. 555).

The Court notes the ALJ's hypothetical questions to the VE included all of the limitations found in the ALJ's assessment of Plaintiff's RFC (Tr. 21, 553); however, Plaintiff does not dispute the consistency between the hypothetical question and the RFC assessment. Plaintiff argues the ALJ's limitation requiring Plaintiff to avoid "unusual stress" is insufficient to account for Plaintiff's mild to moderate difficulties in maintaining

9

concentration, persistence, or pace that resulted from the severe impairment of an affective disorder (Tr. 15-16). The Court disagrees.

In *Clements v. Astrue*, No. 3:08-cv-65, 2009 WL 260980 (M.D. Fla. Feb. 4, 2009), the Court was faced with a similar issue to that which is before this Court today.[5] In *Clements*, the ALJ found the plaintiff had "moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. *Id*. at *6. In both the plaintiff's RFC and hypothetical question posed to the VE, the ALJ in *Clements* attempted to account for Plaintiff's mental difficulties by precluding Plaintiff from holding occupations which required more than occasional contact with the public. *Id.* The Court remanded the case due to an error in the weight given a treating physician's opinion and on this issue for ALJ to develop a RFC finding reflective of all of the plaintiff's impairments and to pose a hypothetical setting forth the same. *Id*. The Court found it unclear if the stated mental limitation on the plaintiff's ability to work sufficiently encompassed all the impairments recognized the by the ALJ. *Id.*[6]

---

[5]Although it is not clear from the opinion which of the plaintiff's mental impairments were found to be severe, the plaintiff alleged inability to work "based on major depression and schizoaffective disorder." *Clements*, 2009 WL 260980 at *1.

[6]In another somewhat similar case, *Milenbaugh v. Barnhart*, No. 3:05-cv-83-J-MCR, (M.D. Fla. Mar. 28, 2006) (unpublished decision), the Court was unclear how the ALJ determined the plaintiff's severe mental impairments required her to "simply avoid unusual stress" and remanded the ALJ's decision for further proceedings. In *Milenbaugh*, the plaintiff was found to have severe impairments that included, among other things, anxiety and affective disorder. *Id.* On the facts presented, the Court in *Milenbaugh* questioned whether the assessed RFC, which included the "avoidance of unusual stress," adequately encompassed the plaintiff's two severe mental impairments of anxiety and affective disorder that were found to cause "moderate difficulties in concentration, persistence or
(continued...)

In contrast, the Court finds the mental limitations in this case are adequately accounted for in the functional limitation requiring Plaintiff "avoid work that involves exposure to unusual stress." Plaintiff in the case at bar was not determined to have moderate limitations in all three broad functional areas of activities of daily living; social functioning; and concentration, persistence or pace, as was the plaintiff in *Clements*. Here, Plaintiff was determined to have only "mild to moderate" limitations in the single area of concentration, persistence or pace (Tr. 21). The plaintiff in *Clements* presented evidence of a GAF scores ranging from 30 to 55, *see Clements*, 2009 WL 260980 at *4, whereas in this case, Plaintiff has not presented any evidence that the affective disorder has resulted in serious impairment of functioning.[7]

As noted by the Commissioner, the four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining at steps two and three which of the claimant's mental impairments are severe and from which the ALJ must determine the mental functional limitations on the claimant's ability to

---

[6](...continued)
pace" and mild difficulties in social functioning and activities of daily living. *Id*.

[7]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

perform basic work activities.  *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996).  Determination of the functional limitations is a "highly individualized" and fact specific determination.  *Id.*  Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.  20 C.F.R. § 404.1521(b). The category of concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

The record supports the ALJ's determination that avoidance of work that involves exposure to unusual stress will accommodate the effect of Plaintiff's affective disorder on Plaintiff's ability to work.  On the facts of this case, the Court finds the Plaintiff's RFC and the hypothetical questions asked of the VE included proper limitations that adequately encompass Plaintiff's severe mental impairment of an affective disorder that results in mild to moderate limitations in Plaintiff's ability to sustain the requisite attention and concentration to complete the basic work tasks of the other work identified by the VE.  *See Dannels v. Astrue*, No. 07-4122-JAR, 2008 WL 4191530 (D. Kan. Sept. 11, 2008) (finding mild restrictions in activities of daily living, mild difficulty in maintaining social functioning, and moderate difficulty in maintaining concentration, persistence or pace were sufficiently included in the mental RFC finding that claimant was capable of understanding, remembering and carrying out simple instructions consistent with unskilled work).

**Treating Physician's Opinion**

The second issue is whether the ALJ improperly ignored the medical opinion of Plaintiff's primary care physician, Dr. Alberto Castiel, M.D (P's Brief at 19-24). After review of the ALJ's decision and the record, the Court finds the ALJ had good cause to give less than substantial or considerable weight to Dr. Castiel's opinion because Dr. Castiel's opinion was not bolstered by the evidence and was contrary to the evidence of record.

Ordinarily, the opinion, diagnosis, and medical evidence of a treating physician are entitled to substantial or considerable weight, unless the ALJ finds good cause to do otherwise. 20 C.F.R. § 404.1527(d)(2); *Lewis*, 125 F.3d at 1440. The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence, is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). If an ALJ elects to *disregard* the medical opinion of a treating physician, then he must clearly articulate the reasons for so doing. *Id.* (emphasis added).

Plaintiff was seen by Dr. Castiel at Global Family Care from approximately October 2001 to October 2006 (Tr. 241-323, 450-479). Plaintiff was treated by Dr. Castiel for a variety of ailments, including low back pain (Tr. 241, 285, 300, 455), depression (Tr. 241, 278, 469), anxiety (Tr. 294, 456), dizziness (Tr. 255), short term memory loss (Tr. 257), sore throat (Tr. 275), congestion (Tr. 284), and insomnia (Tr. 469). Plaintiff presented to Dr. Castiel with complaints of lower back pain and depression. Dr. Castiel prescribed pain medications and anti-depressants for Plaintiff (*see, e.g.*, Tr. 241, 245, 268), referred Plaintiff to physical therapy (Tr. 187, 203), and referred Plaintiff to Dr. Arkam Rehman, M.D., for pain management (Tr. 194-194).

First, Plaintiff claims the ALJ "ignored the medical opinion of Dr. Castiel, one of Mr. Stout's treating physicians, that Mr. Stout could not perform any work activity on a 'regular and continuous basis' " (P's Brief at 19). However, after a review of the ALJ's decision, it is clear the ALJ did not ignore the medical records or the opinions of Dr. Castiel (Tr. 22-24). In fact, the ALJ devoted four paragraphs in the decision to extensive discussion of Dr. Castiel's medical records and opinions (Tr. 23-24).

In weighing Dr. Castiel's opinions, the ALJ explained that he gave "little if any weight" to Dr. Castiel's RFC because he felt the RFC "lack(ed) clinical support or objective medical findings...especially regarding any psychiatric limitations" (Tr. 23). On October 3, 2006, Dr. Castiel completed an RFC assessment in which he determined Plaintiff was "incapable of even 'low stress' jobs" and was unable to walk any city blocks without rest or severe pain (Tr. 252). Dr. Castiel determined Plaintiff could sit and stand for ten minutes at one time, could sit and stand/walk less than two hours total in an eight hour working day, and must walk every five minutes for five minutes (Tr. 452-453). Dr. Castiel limited Plaintiff to lifting no more than five pounds, occasionally looking down or holding his head in a static position, and rarely looking up, turning his head right or left, twisting, stooping, crouching/squatting, or climbing stairs (Tr. 453-454). Dr. Castiel limited Plaintiff's use of his hands, fingers, and arms to the following percentages during an eight hour working day: grasping, turning, or twisting with his hands to 30%, fine manipulations with his fingers to 20%, and reaching with his arms to 10% (Tr. 454).

The ALJ explained one reason for his disagreement with Dr. Castiel's opinion that Plaintiff was unable to undertake even a "low stress job" was because "Dr. Castiel is not a psychiatrist and he has not referred the claimant for any mental health treatment" (Tr. 23-

14

24). Observation of the nature of the treatment given and the specialty of the treating source for a claimant's mental impairment are factors properly considered by the ALJ. 20 C.F.R. §§ 404.1526, 404.1527. Even though the ALJ gave little weight to Dr. Castiel's stated limitations for Plaintiff, it is clear he did give Dr. Castiel's opinion some weight as evidenced by finding Plaintiff had a severe mental impairment and incorporating a limitation on Plaintiff's ability to work from that impairment. Plaintiff's work base was eroded by, among other things, elimination of work involving "exposure to unusual stress" (Tr. 21).

Moreover, the ALJ articulated Dr. Castiel's opinion was not bolstered by "objective medical findings" (Tr. 23). Presumably the ALJ was referring to a variety of medical tests that Dr. Castiel ordered Plaintiff to undergo. For instance, in 2001, Plaintiff underwent an MRI of the left knee, which was normal for Plaintiff's age (Tr. 322). In 2002, Plaintiff underwent an x-ray of the lumbar spine, which was unremarkable (Tr. 296, 320). On April 7, 2003, Plaintiff underwent an MRI of the lumbar spine, which revealed mild lower lumbar disc and facet degenerative changes (Tr. 290, 319). In 2004, Plaintiff underwent a CT scan of the brain, which was negative (Tr. 318), and an MRI of the brain, which revealed no focal or acute abnormality (Tr. 317). Overall, the test results were unremarkable; therefore, Dr. Castiel's opinion was not bolstered by his objective medical findings. *See Edwards*, 937 F.2d at 583 (a treating physician's opinion may be discounted if not accompanied by objective medical evidence).

In terms of Dr. Castiel's opinions regarding Plaintiff's functional loss, the ALJ found the limitations set out in Dr. Castiel's RFC to be "clearly inconsistent with the claimant's objective medical findings and treatment history" (Tr. 24). This Court's review of Dr. Castiel's treatment notes finds those records do not reflect the extent of functional loss Dr.

15

Castiel described for Plaintiff in the Physical Residual Functional Capacity Questionnaire (Tr. 241-323, 450-479). In fact, the only functional limitations noted by Dr. Castiel in the treatment notes were primarily decreased range of motion of the lumbar spine (Tr. 243, 244, 248, 274) and guarded gait (Tr. 248, 464), which do not reflect the stringent limitations concerning Plaintiff's use of his head, hands, fingers, and arms that Dr. Castiel included when filling out the questionnaire (Tr. 453-454). It is clear that Dr. Castiel's opinion is inconsistent with his own medical records (Tr. 23).

The ALJ also articulated that he gave Dr. Castiel's opinion less than substantial or considerable weight because Dr. Castiel's opinion was contrary to the evidence from "the Veterans Administration, including the objective medical findings and conclusions of Drs. Madison, Tallent, and Houston" (Tr. 24).[8] Although the ALJ did not specifically describe the contradictions he was referencing in the treatment records from the Veterans Administration physicians, it is clear from a review of the record that Dr. Castiel's assessment of Plaintiff's capabilities was inconsistent with the medical records evidence from the Veterans Administration physicians.[9]

---

[8] Although the ALJ refers to records from Dr. Tallent as included with those of Drs. Madison and Houston in Exhibits 5F and 14F, the Court finds no records from Dr. Tallent located in these exhibits. It appears Dr. Tallent conducted a neurological examination, history and physical of Plaintiff on October 13, 2005 that, in fact, is accurately reported by the ALJ in his decision and is contained within Exhibit 17F (*see* Tr. 414-19, 23).

[9] The Court would also note that Dr. Castiel's opinion is contrary to findings of the DDS reviewing physicians, whose RFC determinations for Plaintiff range from sedentary to light exertional work with postural limitations. (*See* Tr. 228-35, Physical Residual Functional Capacity Assessment by Dr. Eric. Puestow, M.D., on November 15, 2004; Tr. 353-60, Physical Residual Functional Capacity Assessment by Dr. Nicholas Bancks, M.D., on April 1, 2005.) While these findings alone do not constitute substantial evidence to support an ALJ's RFC assessment for a claimant, they do provide evidence of record which is contrary

(continued...)

On February 13, 2004, Plaintiff was seen by Dr. William Madison, M.D., for a compensation and pension evaluation (Tr. 189-191). Dr. Madison reviewed Plaintiff's "c-file and medical records from his primary care physician" and conducted a physical examination of Plaintiff (Tr. 189-191). Upon physical examination, Dr. Madison found: (1) "normal lumbar lordosis to be slightly flattened;" (2) "tenderness just above the left sacroiliac joint;" (3) negative straight leg raising to 90 degrees; and, (4) lumbar spine range of motion 0 to 20 degrees of the left and right lateral flexion, 0 to 85 degrees of forward flexion, 0 to 45 degrees of right thoracolumbar rotation, and 0 to 35 degrees of left thoracolumbar rotation (Tr. 190). Dr. Madison noted Plaintiff was unable to proceed through additional motions due to discomfort but was able to "walk on his toes and heels, squat, and forward flex the spine without undue difficulty except for exclamations of discomfort with the forward flexion of the spine" (Tr. 190). Dr. Madison diagnosed Plaintiff with chronic low back pain of undetermined etiology and possible lumbar sprain or strain (Tr. 191).

During Plaintiff's visit with Dr. Madison, Plaintiff also underwent an x-ray of the lumbosacral spine, which was "essentially negative...for patient's age with early degenerative changes of the upper lumbar spine" (Tr. 177). Several months later Plaintiff was seen by Dr. William H. Houston, III, M.D., for an initial outpatient visit (Tr. 325). Similar to Dr. Madison's findings, Dr. Houston remarked the etiology of Plaintiff's back pain "is a conundrum and imaging studies so far have shown only mild djd changes which would not

---

[9](...continued)
to the opinion of a treating physician and entitled to be weighed as the opinions of experts reviewing the record. *See Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1093-94 (11th Cir. 1985); 20 C.F.R. § 404.1527(f).

account (for) his severe sx" (Tr. 325). During this visit, Dr. Houston found Plaintiff "moves slowly" but is "in no acute distress" (Tr. 329) and diagnosed Plaintiff with lower back pain/neck strain and knee pain (Tr. 331). On March 31, 2005, Plaintiff underwent an EMG, which revealed mild bilateral L5 and possible left S1 radiculopathy (Tr. 386), and on April 20, 2005, Dr. Houston ordered Plaintiff to undergo an MRI of the lumbar spine, which revealed mild degenerative findings at L4-L5 (Tr. 363).

On July 26, 2004, Dr. Castiel wrote a letter to the Department of Veterans Affairs concerning Plaintiff's condition (Tr. 249-250). Dr. Castiel remarked Plaintiff's "disability of his lower back is complete and total" (Tr. 250). The ALJ rejected this statement from Dr. Castiel (Tr. 24), and it is clear from a review of the above Veterans Administration records, which were subsequent to Dr. Castiel's 2004 letter, that the ALJ had good cause to reject Dr. Castiel's opinion.

Thus, the Court finds the ALJ carefully considered and weighed the opinions of Dr. Castiel. The Court finds the ALJ properly applied the law, made clear his rationale, and had good cause to discount the opinion of Dr. Castiel because Dr. Castiel's opinion was not bolstered by the evidence, was not bolstered by his own medical records, and was inconsistent with the records from the Veterans Administration, including records from Dr. Madison and Dr. Houston. The ALJ did not err in affording Dr. Castiel's medical opinions "little or no weight," and he certainly did not ignore this opinion evidence.

## CONCLUSION

Review of the record as a whole reveals substantial evidence supports the ALJ's finding of non-disability. Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk

of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2009.

Copies to:
Counsel of Record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge